Filed 3/27/26  In re L.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re L.H. et al., Persons Coming Under the Juvenile Court Law. | |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.M.,<br><br>    Defendant and Appellant. | D086696<br><br>(Super. Ct. Nos. JJP001553, JJP001554, JJP001555) |

APPEAL from orders of the Superior Court of Imperial County, William D. Quan, Judge.  Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kelly Ranasinghe, Deputy County Counsel, for Plaintiff and Respondent.

M.M. (Mother) appeals the juvenile court's jurisdictional and dispositional orders in a Welfare and Institutions Code[1] section 300 dependency proceeding for her three children, K.S. (age 17), T.H. (age five), and L.H. (age four). Mother argues substantial evidence does not support the juvenile court's jurisdictional findings as to her under section 300, subdivision (b). She does not, however, challenge the findings involving Father,[2] which are sufficient to support the court's jurisdictional order.

Mother also contends that the juvenile court applied the wrong statutory framework when it entered removal findings under section 361, subdivision (c), for her, despite her status as a noncustodial parent. But she forfeited this issue by failing to raise it below. Moreover, even if the court erred, it was harmless. Applying the law to the facts, the court's dispositional order was supported by substantial evidence, including Mother's refusal to drug test, her history of substance abuse and the termination of her parental rights to her other children in dependency cases related to her substance abuse.

Accordingly, we affirm the court's jurisdictional and dispositional orders.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Father (also named T.H.) is the presumed father of K.S., T.H. and L.H. Father is not a party to this appeal and will only be mentioned as necessary for context. Mother is the biological parent of all three children.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prior Child Welfare History*

When she was 16 years old in or around 2001, Mother had her first child. Later, she had a second. When the first child was four years old, the San Diego County child abuse hotline received a report of child abuse involving allegations of general neglect and substantial risk perpetrated by Mother against both children. These allegations were deemed substantiated, the children were detained and declared dependents of the juvenile court. The court ordered family unification services for Mother but ultimately terminated her parental rights as to both children in 2006.

In 2007, the child abuse hotline received another suspected child abuse report, this time with an allegation of general neglect perpetrated by Mother against her third child. This allegation was deemed substantiated, the child was detained and declared a dependent of the juvenile court. The court ordered family unification services for Mother but ultimately terminated her parental rights in 2008.

Both cases were related to Mother's substance abuse.

### B. *The Department's Investigation In This Case*

In March 2025, Father was arrested for possessing methamphetamine, stolen money, a stolen vehicle and an unregistered gun. During his arrest, Father disclosed that his children K.S., T.H. and L.H. were home alone. The Imperial County Department of Social Services (Department) opened an investigation.

During the investigation, a social worker observed that the family's trailer home was surrounded by a large amount of junk. It did not have a functioning shower or toilet and was "infested with roaches." The children had dirt on their face and arms, matted hair, dirty unkempt clothing, and a

3

foul body odor.  They appeared as though they had not bathed in days.  T.H. and L.H. were not appropriately dressed for the weather and were walking around without shoes or socks.

Mother, who was staying elsewhere, denied having any knowledge of Father's drug use, his illegal activities or the trailer home's condition because she had not been inside of it for several weeks.  She explained that she travelled between Imperial County and San Diego, where she was caring for her ill father, and did not have a stable home.  She refused drug testing because she had already completed substance abuse treatment and other requirements to regain custody of her daughter.

## C.    *Petition and Detention Hearing*

The Department filed a petition alleging the children were described by section 300, subdivision (b)(1), because they had suffered, or there was a substantial risk they would suffer, serious physical harm or illness from the inability of their parents to:  (i) supervise or protect them adequately; (ii) supervise or protect them adequately from the conduct of the custodian with whom the children were left; (iii) provide adequate food, clothing, shelter or medical treatment; and (iv) provide regular care due to the parents' mental illness, developmental disability, or substance abuse.

At the March 2025 detention hearing, Mother's counsel asked to have the children placed with her.  Counsel directed the court to the paternal grandmother's statements that Mother ensured the children were bathed, that she cleaned the inside of the family residence and did "everything to take care of the children" when she was there.  The children's counsel requested continued detention.  The court made a prima facie finding on the petition, removed the children from the parents' care, granted them reasonable visitation and ordered drug testing for Mother.

4

At a further detention hearing in April 2025, Mother's counsel again requested the children be returned to her. Counsel nevertheless conceded Mother had not drug tested and that the Department had not yet assessed her residence. The Department's counsel similarly reported that Mother refused drug testing and was unavailable for a home assessment. The court denied Mother's request, indicating it first wanted her home assessment to be completed. The court noted that Mother did not want to drug test but again ordered drug testing as directed by the Department. The court then set a jurisdiction hearing for April 28, 2025.

## D.  *Jurisdiction*

In its April 2025 jurisdiction report, the Department reported that Mother failed to drug test following the detention hearing. At a child and family team meeting, she denied hearing the judge order her to drug test. She stated that, in a previous child welfare case, she received mental health and substance abuse services and did not believe she should have to do that again. The social worker noted that the parents declined to cooperate in interviews, the investigation process or child safety assessment.

K.S. reported she was unhappy in the foster home and wanted to return to Father or live with Mother or the paternal grandmother. She preferred living with Father and described Mother as not abusive, but "a bit harsh." All three children were drug tested by hair strand. Both T.H. and L.H. tested positive for methamphetamine, while K.S. tested negative.

The social worker was concerned that Mother suffered from an untreated substance use dependency. She also concluded that the parents did not provide the children with adequate medical and dental care. A family nurse practitioner reported K.S. needed immediate dental care because she had decaying teeth. A subsequent dental exam confirmed the problems.

The dentist recommended fillings, a root canal and a crown, and referred K.S. to an orthodontic specialist.

In May 2025, Father tested positive for methamphetamines. Mother did not appear for her drug test. She agreed to cooperate with a telephonic child safety assessment but declined to cooperate with drug testing and services.

That same month, the court held a contested jurisdiction hearing. A social worker testified regarding Father's initial arrest, which led to the Department referral. Upon responding to the trailer park, he observed junk outside Father's trailer, including an old motorcycle, a bicycle tire, and a wheel, which he identified as safety hazards.

An officer went to Father's home after his arrest and at his request because the children were there. The officer confirmed the trailer's unsanitary condition. In his opinion, the home posed a risk to the children, especially because two were toddlers.

Another social worker verified the children's poor hygiene. She testified that Father had not taken the children to a pediatrician in over a year and did not know whether they were up to date on immunizations. Mother had refused to take a drug test, and the social worker believed Mother had a substance abuse history that led to removal of her other children. Her supervisor told her not to release the children to Mother because of Mother's prior child welfare history.

Mother reported that she previously had a dependency action in Washington and completed a drug rehabilitation course. She claimed her refusal to drug test was because she did not "want to get into it with CPS" and that she has not "done anything" or "been in trouble" and had "gotten [her] issues treated."

The court sustained most of the petition, but it struck certain statements regarding the lack of running water, bongs throughout the home, and the absence of food.  The judge found Mother credible and forthcoming and that she was truthful in her testimony that she had not been inside the home.  But he clarified he did not find credible certain portions of her testimony in which she claimed she was unaware of some of the children's issues that led to dependency.  The court sustained the allegations regarding unsanitary conditions and continued the matter for disposition.

E.  *Disposition*

Following the contested jurisdiction hearing, the Department filed a disposition report in June 2025, recommending that the children be removed from parental custody and both parents be provided reunification services.  The report noted that Mother had failed to comply with drug tests in March, April and May 2025.

Mother visited the children only once since they were removed from her custody.  The Department received a report from San Diego County that Mother "has extensive child welfare history in which she previously had children removed from her care due to an extensive history with substance abuse, in specific to the illicit substance of methamphetamine."  Additionally, the report contained a dental evaluation indicating K.S. needed a further root canal, crown and filling.  The evaluation described it as "Class III:  Urgent— pain, abscess, large carious lesions or extensive gingivitis."

At the contested disposition hearing in August 2025, a social worker explained that the Department was recommending family reunification services for the family.  She testified that both T.H. and L.H. had tested positive for methamphetamine, and that Mother refused to submit to court-ordered drug tests.

7

County counsel requested that the children not be returned to either parent and that reunification services be provided to both. The children's counsel also asked that the children not be returned to either parent. Mother's counsel requested that the children be returned to her, claiming there was no evidence of drug use by Mother or any exposure of the children to drugs.

The court found, by clear and convincing evidence under section 361, subdivision (c), that there was a substantial danger to the children's physical health, safety, and protection, and that there were no reasonable means by which the children could be placed with either parent. The court opined that "the inference as to Mother . . . weighs even more heavy in terms of a substantial danger." It explained that Mother admitted she "had her parental rights terminated from siblings of the kids that we have before us today." The court inferred that Mother's admission that she had previously been "court ordered to take a substance abuse counseling course" was "based on some finding made by the Court of substance abuse." The court recalled it "had requested and ordered [Mother] to drug test. She did not. She then was asked again to drug test. She said 'I'll do it if the judge orders it.' The Court had already ordered it. She still refused." The court concluded, "Does that rise to the level of substantial danger based on [M]other having admitted to the court-ordered drug program before, refusing to drug test now that the children had been removed and parental rights were terminated before, is [M]other under her prior child welfare history? Yes, it reaches that level."

The court declared K.S., T.H., and L.H. dependents of the court, removed them from parental custody, and ordered reasonable visitation and reunification services for the parents.

8

## DISCUSSION

### A.  *Relevant Legal Principles*

On appeal, we review the record for substantial evidence to support the juvenile court's section 300 jurisdictional findings.  (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 137.)  In so doing, we consider the entire record, draw all reasonable inferences in favor of the prevailing party, and affirm the order if substantial evidence supports the court's findings.  (*Id*. at pp. 137–138.)  A finding is supported by substantial evidence if a trier of fact could reasonably make that finding in light of the entire record.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393–1394.)  We must affirm an order that is supported by substantial evidence even if other evidence, or other inferences from the evidence, would have supported a contrary finding.  (*In re N.M.* (2011) 197 Cal.App.4th 159, 168 (*N.M.*).)  The appellant has the burden to show there is insufficient evidence to support the juvenile court's order. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103 (*Lana S.*); *N.M.*, at p. 168.)

Juvenile dependency proceedings are intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.)  Although "the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection.  (*In re Troy D.* (1989) 215 Cal.App.3d 889, 899–900.)  A parent's past conduct is typically a good predictor of future behavior.  (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169–1170.)

9

After a juvenile court exercises jurisdiction over a child pursuant to section 300, it must determine the appropriate disposition for that child. (§§ 360, subd. (d), 361, 362; *In re N.M., supra*, 197 Cal.App.4th at p. 169.) Because section 361, subdivision (c), requires proof by clear and convincing evidence, we determine "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011; see also *In re V.L.* (2020) 54 Cal.App.5th 147, 154–155 [standard of review described in *Conservatorship of O.B.* applies to removal findings under § 361, subd. (c)].)

## B.    *Jurisdictional Findings*

The Department contends we do not need to review the jurisdictional findings as to Mother and that we can just rely on the findings as to Father to support the court's jurisdiction. We agree.

Jurisdiction in a juvenile dependency case is taken "over children, not parents." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491 (*I.A.*).) The juvenile court asserts jurisdiction when one parent's conduct has triggered the statutory bases for jurisdiction listed in section 300. (*Ibid.*) Thus, "a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) "[A] petition need only contain allegations against one parent to support the exercise of the court's jurisdiction." (*In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)

Here, Mother does not dispute the jurisdiction allegations against Father. Accordingly, the unchallenged jurisdictional findings against Father support the assertion of juvenile court jurisdiction regardless of the jurisdictional finding against Mother. (*In re M.C.* (2023) 88 Cal.App.5th 137,

10

150–151 ["Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only."].) As a result, we do not need to consider the jurisdictional findings against Mother.

Furthermore, we only have discretion "to reach the merits of [Mother's] jurisdictional challenge in three situations: (1) the jurisdictional finding serves as the basis for dispositional orders that are also challenged on appeal; (2) the findings could be prejudicial to the appellant or could impact the current or any future dependency proceedings; and (3) the finding could have consequences for the appellant beyond jurisdiction." (*In re A.R.* (2014) 228 Cal.App.4th 1146, 1150 (*A.R.*).) As discussed below, because none of those situations exist, we lack discretion to consider the jurisdictional findings she challenges.

The jurisdictional findings against Mother did not serve as the basis for the dispositional order removing the children from her custody. (*A.R., supra*, 228 Cal.App.4th at p. 1150.) Indeed, Mother contends that the "sole" jurisdictional allegation sustained against her was that she "could not provide a date for when she last took the children to the doctor and that she 'failed to provide medical and dental treatment for the children; thus, placing them at substantial risk of serious physical harm or illness.'" More specifically, she argues that "[t]he purported neglectful conduct in this case related to K.S.'s dental issues; the only medical concern identified in the record." By contrast, the court's dispositional order removing the children from Mother's care was based on her history of substance abuse, her prior child welfare history, and her refusal to drug test.

Mother also asserts no argument as to how the jurisdictional findings as to her could be prejudicial to her, could impact the current or future

11

dependency proceedings, or could have consequences beyond jurisdiction. Nor can we independently conceive of any such potential prejudice, impact or consequence. (*A.R., supra*, 228 Cal.App.4th at p. 1150.) Accordingly, we lack discretion to consider them. Finally, even if we had discretion to consider them, we would decline to do so. (See *I.A., supra*, 201 Cal.App.4th at p. 1495 ["Because we find no threatened prejudice to Father from [the challenged] jurisdictional finding, we decline to exercise our discretion to review it."].)

Here, where the children were found unattended in deplorable conditions after Father was arrested for methamphetamine possession while driving a stolen vehicle, there was more than substantial evidence to support the court's jurisdictional order.

## C.   *Dispositional Findings*

Mother next argues that the juvenile court erred in making removal findings under section 361, subdivision (c)(1), instead of section 361.2. She asserts that section 361, subdivision (c), applies to parents who had custody prior to detention, and therefore, the court should have applied section 361.2, which applies to noncustodial parents. The Department argues that Mother forfeited this issue by not raising it below. We agree with the Department.

As a general matter, a claim of error is forfeited on appeal if it is not raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; see also *In re A.A.* (2012) 203 Cal.App.4th 597, 605 ["[f]ailure to object to noncompliance with section 361.2 in the lower court results in forfeiture"].) At the disposition hearing, instead of arguing that section 361.2 should apply, Mother's counsel conceded she was "an offending parent so 361.2 does not apply." "In dependency litigation, nonjurisdictional issues must be the subject of objection or appropriate motions in the juvenile court; otherwise[,] those arguments have been waived [or forfeited] and may not be raised for

12

the first time on appeal. [Citations.]" (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) Accordingly, Mother forfeited this issue.

Moreover, even if the court applied the wrong standard, we " 'cannot reverse the court's judgment unless its error was prejudicial, i.e., " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " ' " (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303 (*D'Anthony D.*).) The analysis under section 361.2 is "similar[ ]" to the analysis under section 361, subdivision (c). (*D'Anthony D.,* at p. 303.) As noted, section 361, subdivision (c), permits the juvenile court to remove a child from a parent's custody only if it finds clear and convincing evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home . . . ." (§ 361, subd. (c) (1).) Section 361.2 requires placement with a noncustodial parent "unless [the court] finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) It is not clear that there is any substantive difference between these two standards. (See, e.g., *D'Anthony D.,* at p. 301 [rejecting the contention "that an implicit 'nonoffending' requirement can be invoked to preemptively deny a noncustodial parent consideration for custody without assessing whether the placement would pose a detriment to the child under section 361.2, subdivision (a)"].)

Moreover, any error would be harmless. In *D'Anthony D., supra,* 230 Cal.App.4th 292, like here, the juvenile court removed a child under section 361, subdivision (c)(1), instead of section 361.2. On appeal, the court determined the error was harmless, explaining that, "in assessing whether this error was prejudicial, we can neither ignore the similarity between these

13

statutes' mandatory findings, nor disregard the evidence supporting the court's 'substantial danger' finding concerning placement with [the parent]." (*D'Anthony D.,* at p. 303.)

The same is true here. The juvenile court explicitly found "[t]here was clear and convincing evidence it would be detrimental to place the children with the parents at this time, necessary to remove the custody under [section] 361, [subdivision] (c)." It also found "[t]here is a substantial danger to the physical health and physical well[-]being of the children, along with the safety and protection of the children" and there was "no reasonable alternative means to protect them currently." In support, the court noted, among other things, Mother's failure to drug test and her history of having children removed from her custody previously due to substance abuse. It found that "[M]other admittedly had . . . her parental rights terminated from siblings of the kids that we have before us today" and that she "had to have been ordered to undertake the substance abuse course based on some finding made by the Court of substance abuse." The court noted it was entitled to consider whether there was any relapse because "recovery is a life[-]long endeavor" and "[t]here are many missteps that can happen along the road to recovery." It pointed out that it "had requested and ordered mother to drug test. She did not."

Although the court's findings do not perfectly reflect those required under section 361.2, we surmise that in most, and perhaps all, cases in which a court finds "substantial danger" to the children's "physical health" and physical well-being of the children, along with the safety and protection of the children if returned to Mother's custody, it would also find placement with that Mother to be "detrimental" to the children's "safety, protection, or physical or emotional well-being." (See *In re A.A., supra*, 203 Cal.App.4th

14

at p. 610 ["It is illogical to require a court to consider placing a child with a noncustodial parent who has already been determined to pose a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor."].) We are confident the substantial evidence supporting the court's "substantial danger" findings also supports a finding of "detriment" under section 361.2.

Applying the law to the facts, there was substantial evidence to support the court's dispositional order under the clear and convincing standard. Mother's parental rights as to three of the children's siblings were terminated in prior dependency cases resulting from her substance abuse. She admitted she had previously completed a drug rehabilitation course. Here, L.H. and T.H. tested positive for methamphetamines and Mother was ordered to drug test and failed to drug test on three separate occasions. Under such circumstances, the court did not err in finding that placement with Mother would be detrimental to the children's safety, protection and well-being.

We disagree with Mother's assertion that "numerous reasonable means existed" that would have "ensured [the children's] safety while allowing placement with her." The court considered alternatives to removal and determined there are "no reasonable alternative means to protect [the children] currently." It found "[r]easonable efforts were made to prevent or eliminate the need for the children's removal from the home" but concluded removal "necessary and appropriate" because Mother's progress "towards alleviating or mitigating the causes necessitating placement has been minimal." Mother's history of failing to cooperate with the Department indicates that no amount of supervision could assure the children's safety in Mother's custody. Court orders mandating drug tests and participation in services could not sufficiently protect the children when Mother had a history

15

of failing to show for drug testing and failing to cooperate with the Department.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.